(February 20, 1908.)

## TWIN FALLS LAND & WATER COMPANY, Appellant, v. NELS LIND, Respondent.

### [94 Pac. 164.]

CONSTRUCTION OF CONTRACT—IRRIGATING SEASON—FREE USE OF WATER.

1. Under a contract entered into between an irrigation company and a water consumer providing that the consumer shall pay certain water rents per acre annually for the use of water to irrigate his land, and containing a clause that "water shall be delivered free of all charges during the first irrigating season that water is delivered to said purchaser," *held,* that the words "irrigating season" signify and are equivalent to the entire irrigating period embraced in one year's time, and that it was the intention of the contracting parties to thereby exempt the consumer from payment of water rents for the period of one year, and that the settler is entitled to receive the free use of the water during the irrigating period for one year from the date on which water was delivered to him, and that at the expiration of one year his pay period will begin.

2. Under a contract providing that the water consumer shall be exempt from payment of water rents for the "first irrigating season that water is delivered to him," *held,* that it was the intention of the contracting parties to provide for the free use of water for a definite period of time rather than for any particular crop or crops.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District for the County of Lincoln. Hon. Lyttleton Price, Judge.

Action by the plaintiff to recover on a contract for water rents. Judgment for the defendant and plaintiff appeals. *Reversed.*

S. H. Hays, for Appellant.

Sweeley & Sweeley, for Respondent.

Counsel cite no authorities on points decided.

AILSHIE, C. J.—This action was commenced by the appellant corporation to recover from the respondent water rents for the year 1906. Judgment was entered for the defendant and plaintiff appealed. The appeal involves the construction of two separate contracts. On January 2, 1903, the appellant corporation entered into a contract with the state of Idaho whereby it agreed to construct a system of irrigating canals for the irrigation and reclamation of arid lands under the Carey act, and in that contract there is contained the following paragraph:

"It is hereby agreed that every purchaser of shares in said canal, or holder of stock in said Twin Falls Canal Company, Limited, shall be entitled to have delivered for the irrigation of his land his full amount of water as herein provided, and it is hereby stipulated and agreed that while it retains possession and control of said canal system the party of the second part may make a charge for the delivery of said water for irrigation, to the purchaser of said shares, on the following basis and in the following manner: All of the water dedicated to his land shall be delivered free of all charges during the first irrigating season that water is delivered to said purchaser, and thereafter an annual charge not to exceed eighty cents per acre may be made for each and every acre irrigated."

After the appellant company had entered upon the construction of the canals and ditches and the lands had been opened to entry and settlement, the respondent herein, in contemplation of entering and filing upon a tract of land under the canal system, entered into a contract with the land and water company, which contract, among other things, contains the following paragraph:

"The company agrees that so long as it retains possession of said canal system it will keep and maintain the dams, main laterals and canals in good order and condition, and in case of accident to same will repair any injury thereto as soon as practicable and expedient.

"For the purpose of defraying the expense of delivery of water for irrigation and expense of maintaining and keeping in repair the canal system, the Company have the right to levy against the purchaser an assessment or annual charge sufficient to raise equally and ratably from all users and takers of water a sufficient sum therefor, provided, however, that no such charge or assessment shall be levied or assessed against the purchaser during the first irrigating season after water is delivered under this contract, and thereafter an annual charge or assessment not exceeding eighty cents per acre may be made for such purpose for each and every acre irrigated."

The respondent settled on his land under the appellant's canal in March, 1905, and notice was thereafter given him that water would be ready for delivery to him on or about June 26, 1905. He actually received the water on July 6, 1905. He used the water during the balance of the season and cultivated about twenty-two acres of alfalfa, though made no crop, and by reason of having water on the land, made final proof during the fall of that year, and thereby became entitled to his patent to the land. He declined to pay water rent for the following year 1906, on the ground that the latter year was the "first irrigating season" that he had received the water and that under the contract he was entitled to have the water free for that season. He contended that since he did not receive the water during the whole of the irrigating season of 1905, he could not be charged anything for that year, and that he was entitled to one full irrigating season free of charge. The trial court agreed with his contention and declined to give the canal company judgment for any sum whatever for the use of water during the year 1906. Although the respondent settled on the land in March, 1905, he was under no obligation to do so until water was

ready to be delivered on the land. It was not obligatory on the defendant to make settlement on the land at the time he did, nor was he obliged to receive the water during the year 1905. In other words, he was under no obligation to accept and use water for a portion only of the irrigating season. He might have declined to accept it for that year on the ground that if he did so he could only raise a partial crop and that he could not get the benefit of a whole year's irrigation. On the contrary, however, he did accept and use the water, and as we view the contract under consideration, he was liable to be charged with his free period of use from the date he received the water, and that at the expiration of one year from that date his liability to pay water rents would attach. The respondent calls our attention to section 15 of the act of February 25, 1899 (Sess. Laws 1899, p. 382), which provides that canal companies owning and controlling ditches and canals for the purpose of irrigation, shall keep a flow of water in such canals sufficient for the requirements of all persons entitled to use water therefrom at all times from April 1st to November 1st of each year. Counsel insists that under the provisions of this statute, where the term "irrigation season" is used in the contract, it is intended to mean the period from April 1st to November 1st, and that during such time the farmer irrigates all the crops that he raises during that season, and that it takes the full period of the irrigation season to raise the crops he may desire to grow for one year. He also urges that such period cannot be divided up. In other words, that the crop cannot be started in July and grown up to November and then be hibernated until the next spring and completed. That contention is both theoretically and practically correct in this country where the crops would undoubtedly become somewhat chilled during the interval. We do not think, however, that the contracting parties had specially in mind so much the raising of any particular crop or crops or of a particular irrigating season, but rather a definite period of time. There is but one irrigating season during each year. That season is defined by law as extending from April 1st to

November 1st. If the settler gets the free use of the water for the full period of one year, he necessarily gets the same benefit and he is saved the same rental that he would get and would be saved if he had received the water the first day of the irrigating season and had been able to use it every day during the season. The contracting parties in this case clearly had in mind the exemption of the settler from payment of water rents for the period that water is used during a twelve-month. When entering into the contract no one could tell when the works would be so advanced that water could be delivered to any settler. It was provided, however, that the settler should have the first irrigating season free. If the settler only intended to raise one crop, he would necessarily want the water continuously during one season, but where he is going to continue the use of water, as he must necessarily do in farming, he would need it from year to year. He saw fit to receive and accept the use of the water from July 6th to the end of the season. He found a beneficial use to which he could apply the water, and he should be properly charged with that period. As we construe this contract, he was entitled to have the free use of water from July 6, 1905, the date on which the company delivered it to him, until July 6, 1906, at which time he would become liable for water rents for the succeeding year. It is contended that it would be difficult to apportion the year's water rent between the different months of the irrigating season,—that no one can tell whether the water is of more value to the user during the early part of the season or the latter part of the season. That may be true, but it can make no difference to the consumer if he gets the water free for one entire year. The purpose of the contracting parties was not to fix a rental charge by the month nor for any shorter period than one year or one irrigating season. If the settler pays his water rents each time for the period of one year, he will be entitled to water from the date in July on which he first received water to the corresponding date the next year, and will thereby have a fixed and definite period of time covered by the payment of his water rentals. On the contrary, there can be no injustice

or inequity done either party by allowing judgment against the defendant for an amount equal to that proportion of the annual rentals which the period from July 6th, when water was received, bears to the entire irrigating season. The judgment in this case is reversed, and the cause remanded, with direction to the trial court to make findings and enter judgment in favor of the plaintiff for such proportion of the year's water rentals as the period from July 6th to the close of the irrigating season bears to the entire irrigating season, or, at the option of the defendant, enter judgment against him for the full year's water rentals, the period to end on the 6th day of July the following year. Costs awarded in favor of appellant.

Sullivan, J., concurs.

Stewart, J., concurs except as to the alternative part of the judgment and dissents as to that part of the judgment.